IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AARON LETT, <br><br> Plaintiff, <br><br> v. <br><br> INTERNATIONAL ASSOCIATION OF SHEET METAL, AIR, RAIL AND TRANSPORTATION WORKERS, LOCAL 1594, <br><br> Defendant. | CIVIL ACTION <br><br> NO. 19-3170-KSM |

MEMORANDUM

**MARSTON, J.**                                                                                                                                                                          **February 22, 2023**

Plaintiff Aaron Lett brought disability discrimination claims against his former employer, Southeastern Pennsylvania Transportation Authority ("SEPTA"), and his former Union, Defendant International Association of Sheet Metal, Air, Rail and Transportation Workers, Transportation Division, Local 1594 ("SMART" or the "Union") under state and federal law. Before trial, Lett settled his claims against SEPTA and the company was dismissed as a Defendant pursuant to Local Rule 41.1(b). That left Lett's claim against SMART for aiding and abetting discrimination in violation of the Pennsylvania Human Relations Act ("PHRA"). After a bench trial, the Court concluded that the Union aided and abetted SEPTA's failure to accommodate Lett's disability (end stage renal disease requiring dialysis three times per week) and the resulting constructive discharge. (Doc. No. 126 at 41.) Accordingly, the Court granted in part Lett's request for back pay and compensatory damages for emotional distress, resulting in a total award of $283,604.97 against SMART.[1] (*Id.* at 48–49.)

---

[1] SMART has moved for reconsideration of this award. (*See* Doc. No. 131.) In a

Lett now moves to alter the judgment to include an award of prejudgment interest and attorneys' fees.[2] (*See* Doc. Nos. 129, 130.) SMART opposes that motion. (*See* Doc. Nos. 133, 134.) The Court addresses Lett's request for prejudgment interest before turning to his petition for attorneys' fees.

I.     **PREJUDGMENT INTEREST**

First, Lett seeks to alter the judgment to include prejudgment interest on his back pay award.[3]

In diversity cases, the Court looks to state law to determine whether prejudgment interest is appropriate, and if so, at what rate. *Jarvis v. Johnson*, 668 F.2d 740, 748 (3d Cir. 1982); *Lexington Ins. Co. v. Abington Co.*, 621 F. Supp. 18, 19 n.3 (E.D. Pa. 1985) ("In a diversity action, the question of whether to award prejudgment interest is one of state law."). When an employer has engaged in unlawful discrimination, the PHRA broadly allows a court to "order affirmative action which may include, but is not limited to, reinstatement or hiring of employe[e]s, granting of back pay, or any other legal or equitable relief as the court deems appropriate." 43 Pa. Stat. & Cons. Stat. § 962(c)(3). Courts in this District have interpreted this provision as allowing prejudgment interest. *See, e.g.*, *Marra v. Phila. Hous. Auth.*, 404 F. Supp.

---

contemporaneously filed Memorandum, the Court denies this motion.

[2] During oral argument, Lett's counsel clarified that he is also seeking *post*judgment interest. SMART has not challenged that request. In any event, "post-judgment interest is awarded by statute as a matter of law so it is automatically added, whether or not the district court orders it." *Dunn v. HOVIC*, 13 F.3d 58, 62 (3d Cir. 1993); *see also* 28 U.S.C. § 1961(a) ("Interest shall be allowed on any money judgment in a civil case recovered in a district court."). Accordingly, postjudgment interest shall begin accruing on February 22, 2023—the date of the Amended Judgment that accompany this Memorandum. 28 U.S.C. § 1961(a). It shall accrue at a rate of 4.88% and be compounded annually. *Id.* § 1961(a), (b).

[3] Lett acknowledges that prejudgment interest does not accrue on the portion of the Judgment attributable to compensatory damages for emotional distress. *See Marra*, 404 F. Supp. At n.1 ("Plaintiffs seek delay damages for their compensatory damages awards. . . . In plaintiffs' complaint, plaintiffs sought compensation for 'past and future non-economic losses, including extreme emotional distress, loss of reputation, shame, humiliation, pain and suffering, inconvenience, mental anguish, and impairment in quality of life. . . .' In such circumstances, plaintiffs are not entitled to delay damages.").

2d 839, 848 n.2 (E.D. Pa. 2005) ("To make whole the victims of unlawful discrimination, it is within the Court's discretion to award plaintiff prejudgment interest in cases brought under the PHRA.") (citing 43 Pa. Stat. & Cons. Stat § 962); *Johnson v. Dependability Co.*, Civil Action No. 15-3355, 2016 WL 852038, at *4 (E.D. Pa. Mar. 3, 2016) ("Plaintiff also seeks prejudgment interest on her back pay award, which is authorized under the PHRA and ADA.").

SMART argues that an award of prejudgment interest would be inequitable "and serve no 'make whole' purpose" in this case because in addition to the back pay award, Lett "was awarded another $100,000 in compensatory damages, and received a sizeable settlement from his employer." (Doc. No. 133 at 5.) The Court disagrees. Compensatory damages and prejudgment interest address distinct losses. Specifically, Lett's compensatory damages award compensates him for a non-economic injury (the emotional distress caused by the SMART's discriminatory conduct), while prejudgment interest compensates him for an economic injury (the loss of the use of the money owed to him). *See O'Neill v. Sears, Roebuck & Co.*, 108 F. Supp. 2d 443, 445 (E.D. Pa. 2000) ("Since compensatory damages pursuant to the PHRA refer specifically to non-economic losses, and pre-judgment interest is an economic award to compensate the plaintiff for the loss of the time value of money, a concomitant award is not double compensation for the same loss. Furthermore, the award of both is consistent with the statutory goal of making the plaintiff whole." (cleaned up)). As for the "sizeable settlement" between SEPTA and Lett, the Court has no evidence that such a settlement included anything except an offer for Lett to rejoin the company in a different position. SMART did not object to SEPTA's dismissal before trial and failed to request or put forth any evidence of Lett's settlement agreement with SEPTA.

Accordingly, the Court finds prejudgment interest appropriately awarded in this case. *See Booker v. Taylor Milk Co.*, 64 F. 3d 860, 868 (3d Cir. 1995) (explaining that "[t]he award of

3

prejudgment interest is compensatory in nature; it serves to compensate a plaintiff for the loss of the use of money that the plaintiff otherwise would have earned had he not been unjustly discharged" and referencing a "strong presumption in favor of awarding prejudgment interest, except where the award would result in unusual inequities" (quotation marks omitted)); *Marra*, 404 F. Supp. 2d at 848 n.2 ("Given the similarity of the goals of the available remedies under Title VII and the PHRA—to make victims of discrimination whole—the Court will adhere to the presumption in this action under the PHRA.").

The "rate of prejudgment interest to be applied to the back pay award is not specified by statute" or Pennsylvania case law. *Marra*, 404 F. Supp. 2d at 848 n.2. Instead, the rate of prejudgment interest falls within the Court's discretion. *Id.*; *see also Jackson v. Pa. Dep't of Corr.*, No. 3:13-cv-2747, 2017 WL 2385345, at *5 (M.D. Pa. June 1, 2017) ("The decision to award prejudgment interest and the amount of any interest awarded are within the trial court's discretion." (quotation marks omitted)). The parties disagree about which rate the Court should apply here. Lett asks the Court to use the overpayment rate set by the Internal Revenue Service ("IRS") and discussed in 26 U.S.C. § 6621(a)(1) (*see* Doc. No. 130 at 3), while SMART argues that the appropriate rate is the "one year T-bill [Treasury bill] rate" outlined in 28 U.S.C. § 1961 (*see* Doc. No. 133 at 6). Both methods have support in this Circuit. *Compare Marra*, 404 F. Supp. 2d at 848 n.2 (applying IRS overpayment rate in § 6621 and compounding interest quarterly), *Rush v. Scott Specialty Gases, Inc.*, 940 F. Supp. 814, 818 (E.D. Pa. 1996) (same), *and Taylor v. Cent. Pa. Drug & Alcohol Servs. Corp.*, 890 F. Supp. 360, 369, 377 (M.D. Pa. 1995) (same), *with O'Neill v. Sears, Roebuck & Co.*, 108 F. Supp. 2d 443, 445 (E.D. Pa. 2000) (relying on T-bill rate set forth in § 1961 and compounding interest annually); *Becker v. ARCO Chem. Co.*, 15 F. Supp. 2d 621, 638 (E.D. Pa. 1998) (same); *Young v. Lukens Steel Co.*, 881 F.

4

amount awarded on the first day that Lett missed work." (Doc. No. 133 at 6.)  At oral argument, Lett's counsel conceded that the *entire* back pay award was not due on April 17, 2019, because back pay accrued between that date and February 28, 2022.  *See Moffitt v. Tunkhannock Area Sch. Dist.*, No. 3:13-1519, 2017 WL 319154, at *19 (M.D. Pa. Jan. 20, 2017) ("[I]f the defendant did not owe the plaintiff the full amount of back pay on June 7, 2012, it would be error to assume that amount should be charged interest starting on that day."); *O'Neill*, 108 F. Supp. 2d at 445–46 (finding appropriate methodology is to "compound[ ] the interest yearly based on the amount of earnings that the plaintiff would have collected in that year, plus all the preceding years," using the IRS rate available at the end of each year); *Young v. Lukens Steel Co.*, 881 F. Supp. 962, 978 (E.D. Pa. 1994) ("[T]he interest rate shall be applicable only to the amount the plaintiff would have earned each year before the verdict plus interest and salary the plaintiff would have earned in all of the preceding years (*i.e.* compounded), instead of interest on the whole award annually."); *id.* ([A] plaintiff's backpay award grows incrementally each year . . . .").

Under § 6621, the IRS overpayment rate is the sum of the federal short-term rate set on a quarterly basis by the Secretary of IRS plus 3 percentage points.  26 U.S.C. § 6621(a)(1).  Applying that rate and using the methodology outlined in *Mara*, *Rush*, *Taylor*, and similar cases, the Court calculates prejudgment interest, compounding on a quarterly basis and using the following formula:  Principal $(1 + \text{interest rate}/\text{number of times per year})^{(\text{number of times interest is compounded per year} * \text{number of years})}$ – Principal.[4]  These figures are outlined in the chart below.

---

[4] *See* Dipen Pradhan, *How to Calculate Compound Interest* (2022), https://www.forbes.com/advisor/in/investing/how-to-calculate-compound-interest/

| Date | Fraction of Year | Back Pay | Total Owed | IRS Rate | Interest Owed |
|---|---|---|---|---|---|
| Date Range for Back Pay and/or interest rate period | = (No. of Days in Range) / 365 or 366[5] | = (No. of Days in Range) * $175.03[6] | = (Prior unpaid backpay and interest) + Back pay owed for present period | = Overtime rate[7] | = Total Owed x (1 + Short term rate / 4)$^{(4 * \text{Fraction of Year})}$ – Total Owed |
| Apr. 17, 2019 to June 30, 2019 | 0.205479452 | $13,127.14 | $13,127.14 | 0.06 | $161.63 |
| Jul. 1, 2019 to Sept. 30, 2019 | 0.252054795 | $16,102.63 | $29,391.40 | 0.05 | $370.43 |
| Oct. 1, 2019 to Dec. 31, 2019 | 0.252054795 | $16,102.63 | $45,864.46 | 0.05 | $578.05 |
| Jan. 1, 2020 to Mar. 31, 2020 | 0.24863388 | $15,927.60 | $62,370.10 | 0.05 | $775.34 |
| Apr. 1, 2020 to June 30, 2020 | 0.24863388 | $15,927.60 | $79,073.04 | 0.05 | $982.98 |
| Jul. 1, 2020 to Sept. 30, 2020 | 0.25136612 | $16,102.63 | $96,158.65 | 0.03 | $725.15 |
| Oct. 1, 2020 to Dec. 31, 2020 | 0.25136612 | $16,102.63 | $112,986.43 | 0.03 | $852.05 |
| Jan. 1, 2021 to Mar. 31, 2021 | 0.246575342 | $15,752.57 | $129,591.04 | 0.03 | $958.57 |
| Apr. 1, 2021 to June 30, 2021 | 0.249315068 | $15,927.60 | $146,477.21 | 0.03 | $1,095.56 |
| Jul. 1, 2021 to Sept. 30, 2021 | 0.252054795 | $16,102.63 | $163,675.40 | 0.03 | $1,237.69 |
| Oct. 1, 2021 to Dec. 31, 2021 | 0.252054795 | $16,102.63 | $181,015.72 | 0.03 | $1,368.82 |
| Jan. 1, 2022 to Feb. 28, 2022 | 0.161643836 | $10,326.69 | $192,711.22 | 0.03 | $933.28 |
| Mar. 1, 2022 to Mar. 31, 2022 | 0.084931507 | | $193,644.51 | 0.03 | $492.18 |
| Apr. 1, 2022 to June 30, 2022 | 0.249315068 | | $194,136.69 | 0.04 | $1,936.02 |
| July 1, 2022 to Sept. 30, 2022 | 0.252054795 | | $196,072.71 | 0.05 | $2,471.18 |
| Oct. 1, 2022 to Dec. 31, 2022 | 0.252054795 | | $198,543.89 | 0.06 | $3,002.82 |
| Jan. 1, 2023 to Feb. 22, 2023 | 0.145205479 | | $201,546.71 | 0.07 | $2,041.15 |
| | | | **Total Interest** | | **$19,982.88** |
| | | | **Total Back Pay + Interest** | | **$203,587.85** |

---

[5] The year 2020 was a leap year.

[6] There were a total of 1049 days during which Lett would have received $183,604.97. Thus, Lett's back pay award may also be considered as $175.03 per day.

[7] The IRS publishes this rate quarterly here: https://www.irs.gov/payments/quarterly-interest-rates

7

In sum, the Court grants Lett's request for prejudgment interest on his back pay award, beginning April 17, 2019 and continuing through February 22, 2023, the date the Court enters the accompanying Amended Judgment.[8]

## II. ATTORNEYS' FEES

In addition to prejudgment interest, Lett also seeks an award of attorneys' fees totaling $336,745.60.[9] (Doc. No. 129 at 1.) SMART argues that this request is unreasonable because it includes "excessive, redundant, or otherwise unnecessary fees," and because any fee award should be "apportion[ed] among the Defendants present during the various stages of litigation in accordance with the fault of each defendant." (Doc. No. 134 at 5.)

### A. Legal Standard

Under the PHRA, the court may award attorneys' fees and costs to the prevailing party. *See* 43 Pa. Stat. & Cons. Stat. § 962(c.2) ("If after a trial held pursuant to subsection (c), the court of common pleas finds that a defendant engaged in or is engaging in any unlawful discriminatory practice as defined in this act, the court may award attorney fees and costs to the prevailing plaintiff."). "Use of the term 'may'" in § 962(c.2) "signals the legislature's intention to rest the award of counsel fees and costs within the discretion of the trial court." *Hoy v. Angelone*, 720 A.2d 745, 751 (Pa. 1998); *see also Huyett v. Doug's Family Pharm.*, 160 A.3d

---

[8] SMART also argues that Lett's calculation errs because it "extends through the date of his Motion." (Doc. No. 133 at 6.) Because the Court is entering an Amended Judgment, it is appropriate to calculate prejudgment interest up until that Amended Judgment is entered. *See Northland Ins. Co. v. Lincoln Gen. Ins. Co.*, 153 F. App'x 93, 98 (3d Cir. 2005) (finding no error in the district court's determination that "Pennsylvania law allows [prejudgment] interest to be calculated through the date of the second amendment to the judgment, dated August 6, 2004"); *Am. Nat'l Prop. & Cas. Co. v. Felix*, 399 F. Supp. 3d 324, 351 (W.D. Pa. 2019) ("Felix is entitled to prejudgment interest at a rate of 6% from January 23, 2016 until the date upon which the Court enters an amended judgment consistent with this Memorandum Opinion and Order.").

[9] Lett also seeks an award of $5,295.91 for the costs that he incurred litigating this case. (Doc. No. 129 at 1.) SMART does not challenge this request, so it is granted.

221, 227 (Pa. Super. Ct. 2017) ("The trial court has the discretion to award attorney fees when it determines there has been a violation of the PHRA."). "There is no presumption of attorney's fees and costs under the statute," nor does the statute "require the existence of special circumstances to withhold the award of fees and costs." *Hoy*, 720 A.2d at 752 (distinguishing fee shifting provision in Title VII).

The PHRA's federal counterparts provide useful guidance in setting an appropriate fee. *Id.* at 751–52 ("[W]e may look to our federal brethren for guidance in interpreting like statutory provisions, [but] we are certainly not bound by these enactments or decisions relating thereto, in interpreting this Commonwealth's statutes."). Under those counterparts, the Supreme Court has explained that "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see also Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001) (explaining that courts use the "'lodestar' formula" to calculate a reasonable fee award). "The result of this computation is called the lodestar," and it "is strongly presumed to yield a reasonable fee." *Washington v. Pa. Cnty. Ct. of Comm. Pl.*, 89 F.3d 1031, 1035 (3d Cir. 1996).

The party seeking fees bears the burden of showing that the claimed rates and hours are reasonable. *See Hensley*, 461 U.S. at 433 ("The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed."); *United Sates ex rel. Palmer v. C&D Tech., Inc.*, 897 F.3d 128, 139 (3d Cir. 2018) ("In a statutory fees case, the party seeking attorney's fees has the burden to prove that its request for attorney's fees is reasonable by submitting evidence supporting the hours worked and rates claimed." (cleaned up)). A fee petition must be "specific enough to allow the district court to determine if the hours claimed are

unreasonable for the work performed." *Washington v. Phila. Cnty. Ct. of Comm. Pl.*, 89 F.3d 1031, 1037 (3d Cir. 1996) (quotation marks omitted).  This means that the fee petition "should include some fairly definite information as to the hours devoted to various general activities, e.g., pretrial discovery, settlement negotiations, and the hours spent by various classes of attorneys, e.g., senior partners, junior partners, associates.'" *Id.* at 1037–38 (quoting *Rode v. Dellarciprete*, 892 F.2d 1177, 1190 (3d Cir. 1996)).

Once the party requesting fees has met its burden, "[t]he party opposing the fee award then has the burden to challenge, by affidavit or brief with sufficient specificity to give fee applicants notice, the reasonableness of the requested fee." *United States ex rel. Palmer v. C&D Techs., Inc.*, 897 F.3d 128, 138 (3d Cir. 2018) (cleaned up).  "Once the challenging party does so, 'the district court has a great deal of discretion to adjust the fee award in light of those objections.'" *Id.* (quoting *Rode*, 892 F.2d at 1183).  The court may reduce an award where "the documentation of hours is inadequate," exclude "hours that are excessive, redundant, or otherwise unnecessary," and adjust the award based on the "results obtained." *Hensley*, 461 U.S. at 434.

### B.     *Analysis*

SMART does not challenge the rates sought by Lett's attorneys (Doc. No. 134 at 8 n.1), and the Court agrees that the rates charged by Alan B. Epstein, Esq. (Member), Jennifer M. Chalal, Esq. (Member), Adam Filbert (Legal Intern/Associate), and Debra Izzard (Legal Assistant) are reasonable (*see* Doc. No. 129-1 at 10 (listing hourly rates for each individual)). Instead, SMART argues that the fee request includes "excessive, redundant, or otherwise unnecessary time" entries and that any award should be apportioned to account for SEPTA's role in the case.  (Doc. No. 134 at 9.)  The Court addresses each argument in turn.

1.      **Excessive and/or Redundant Fees**

First, SMART challenges the number of hours that Lett's counsel spent responding to summary judgment and drafting post-trial submissions.

a.      *Summary Judgment*

Counsels' billing records show that they spent 161.9 hours responding to the summary judgment motions brought by SEPTA and SMART, which resulted in $74,035.50 in fees. (Doc. No. 134 at 9; *see also* Doc. No. 129-4 at 15–17 (time entries from February 6, 2021 to March 12, 2021).) Chalal admits that the hours she and Lett's other attorneys spent drafting the response briefs is "an inordinate amount of time," but attests that the hours are justified because the responses "required significant research along with an extensive review of the case file." (Doc. No. 129-4 at 65 n.1 (Chalal affidavit) ("The preparation of the responses in opposition to Defendants' Motions took an inordinate amount of time because Plaintiff needed to respond to Defendant[s'] proposed Statement of Material Facts, prepare his own Counterstatement of Material Facts, and prepare a memorandum of law.").)

SMART does not identify the specific time entries that it believes are excessive. *See LeJeune v. Khepera Charter Sch.*, 420 F. Supp. 3d 331, 343–44 (E.D. Pa. 2019) ("Khepera does not identify any of counsel's supposedly duplicative entries. Rather, Khepera simply asserts that 'all discovery, research, and briefing in the two cases were identical.' This sweeping statement is unhelpful to the court' analysis."); *Marina v. Usher*, Civ. No. 11-6811, 2014 WL 12606151, at *4 (E.D. Pa. Nov. 3, 2014) ("Plaintiff makes only the most general objections to the approximately 300 pages of bills submitted by defense counsel. Although Plaintiff argues that the number of hours billed was 'excessive,' he does not identify 'every single unreasonable entry'—or, indeed, any unreasonable entry—and only argues excessiveness 'on a macro level.' I will overrule such an amorphous general objection."). Instead, SMART, relying on the District

11

of New Jersey's reasoning in *Jefferson v. City of Camden*, broadly argues that counsels' hours are excessive because there is no evidence that the case involved "'unusual facts or complex legal issues' that support such an extreme amount of time claimed." (Doc. No. 134 at 10 (quoting *Jefferson v. City of Camden*, Civil No. 01-4218(RBK), 2006 WL 1843178 (D.N.J. June 30, 2006)).) *Jefferson* is easily distinguished.

In *Jefferson*, the plaintiff requested attorneys' fees for approximately 114 hours that counsel spent responding to the defendant's motion for summary judgment and drafting the plaintiff's cross-motion for summary judgment. 2006 WL 1843178, at *6. The defendant's brief in support of its motion was 24 pages, with 150 pages of exhibits, and the plaintiff's cross-motion included a 34-page statement of facts and a 27-page brief. *Id.* The court found that given the "modest size of Plaintiffs' briefs and accompanying exhibits and the relative simplicity of issues presented, . . . Plaintiffs' counsel should reasonably have spent no more than 75 hours on the motion," and accordingly, reduced the award by 39 hours. *Id.* at *7.

Unlike the plaintiff in *Jefferson*, Lett was required to respond to *two* motions for summary judgment, which, with exhibits, totaled more than 500 pages each, and although the facts and law overlapped to a certain extent, SMART has not argued that Lett's attorneys duplicated efforts in responding to both motions. In addition, the length of Lett's responses reflect the time that went into them, totaling 341 and 388 pages respectively, with approximately 18 pages of each brief devoted to legal argument. (*See* Doc. Nos. 58, 59.) Last, the Court emphasizes that neither motion raised issues that were as simple and straightforward as SMART suggests. SMART's motion in particular involved distinct factual and legal issues related to the aiding and abetting claim that was asserted only against it. As to that claim, the Court agrees with Lett's assessment of the case as involving "novel issues regarding the role of a union as an

12

aider and abettor under the [PHRA]." (Doc. No. 135 at 7.) As the Court noted during oral argument, most of the cases that discuss aiding and abetting under the PHRA involve individuals, not unions (Doc. No. 76 at 48:14–25), and the Court ultimately found only one analogous case in this District and few similar cases from other Districts. (*See* Doc. No. 126 at 41.) Indeed, the dearth of case law is one reason the Court held oral argument and requested additional citations from the parties. (*See* Doc. No. 76 at 48:14–25; *see also* Doc. Nos. 71, 72.)

In addition to the novelty of the aiding and abetting claim, there were multiple other factual and legal complications that affected summary judgment in this case and resulted in a 30-page Memorandum from the Court. (*See* Doc. No. 73.) Among other things, the parties and the Court had to wrangle with multiple provisions in the Collective Bargaining Agreement between SEPTA and SMART, untangle the nature and timing of Lett's meetings with SEPTA and SMART officials, and determine whether a failure to accommodate claim could result in a constructive discharge. (*See id.* at 2–3, 25–29.)

For these reasons, the Court finds reasonable the 161.9 hours that Lett's counsel spent responding to summary judgment. *See EEOC v. Fed Ex. Corp.*, 537 F. Supp. 2d 700, 725 (M.D. Pa. 2005) ("Defendant complains that Intervenor's counsel spent approximately 130 hours responding to two motions for summary judgment that were substantially similar in nature. . . . [T]he Court notes that it was Defendant who elected to file two motions for summary judgment, to which Intervenor was required to respond. It is somewhat disingenuous to litigate aggressively and then complain that the opposing party fought vigorously to defeat motions adverse to its interests. In this case the stakes were high, the issues moderately complex, and the litigation contentious. The Court finds that counsel rendered necessary and valuable services in responding to and defeating Defendant's efforts to dispose of this litigation before trial.").

*Contra. Styers v. Pennsylvania*, 621 F. Supp. 2d 239, 244–45 (M.D. Pa. 2008) (reducing attorney's hours spent opposing summary judgment from 71.99 to 48 hours because the "First Amendment retaliation claim at issue in the litigation was fairly straightforward and did not present any particularly difficult or novel issues of law," and the plaintiff's brief was only "thirteen pages, with three pages of factual summary and ten pages of argument").

            *b.*        *Post-Trial Submissions*

Second, SMART challenges an entry for 2.4 hours that counsel spent "[r]esearch[ing] and prepar[ing] [an] outline for additional submission," and multiple entries totaling 13.8 hours that counsel spent finalizing Lett's settlement with SEPTA. (Doc. No. 134 at 18.) Lett agrees that both categories of fees should be excluded from any fee award against SMART. (*See* Doc. No. 135 at 4 n.1 ("Plaintiff agrees that SMART should not be charged for these hours and consents to the request for a downward adjustment of $6,657.50 to attorneys' fees requested in his Petition."); *id.* at 8 n.2 ("Because Plaintiff cannot recall the nature of the research to establish how it was necessary to move his claims forward, he will agree to this requested deduction as well.").) Accordingly, SMART's motion is granted as to these entries.

\*     \*     \*

In sum, the Court finds reasonable the 161.9 hours that counsel spent responding to summary judgment and will include these entries in any fee award. The Court will, however, omit all entries for the 2.4 hours that counsel spent researching and preparing an "additional submission," and for the 13.8 hours that counsel spent finalizing Lett's settlement agreement with SEPTA.

        **2.**        **Apportionment**

In addition to challenging specific time entries, SMART also argues that the Court should apportion $249,150.00 of the fee award between SMART and SEPTA because this figure

14

represents the total fees incurred from the initiation of these proceedings to Lett's settlement with SEPTA on February 24, 2022. (Doc. No. 134 at 12–19.)

Although the Third Circuit has not addressed the question of apportionment, multiple district courts in this Circuit have found that a court has "wide discretion to equitably apportion fees between several defendants," even when some of those defendants are unable to pay or are no longer parties in the action. *Dixon-Rollins v. Experian Info. Sols., Inc.*, Civil Action No. 09-0646, 2010 WL 3734547, at *2 (E.D. Pa. Sept. 23, 2010); *see also Jefferson*, 2006 WL 1843178, at *18 ("[T]he fact that apportioning fees will deprive Plaintiffs of the entirety of the fee award is inadequate to justify imposing the entire burden of the fee award on a single defendant, particularly as the absence of the other defendants from fee liability is specifically attributable to the settlement entered into with the Plaintiffs."); *Swan ex rel. Carello v. Daniels*, 917 F. Supp. 292, 301 (D. Del. 1995) (collecting "cases in which courts have apportioned attorney fees among multiple defendants" and explaining that "[a] district court has wide discretion on how to divide liability for attorney fees").

In addition, numerous appellate courts in other Circuits have found apportionment may be appropriate in cases involving multiple defendants. *See Jones v. Southpeak Interactive Corp. of Del.*, 777 F.3d 658, 677 (4th Cir. 2015) ("The proposition that district courts have discretion over the proper allocation of a fee award among multiple defendants is widely recognized."); *Turner v. D.C. Bd. of Elections & Ethics*, 354 F.3d 890, 897–98 (D.C. Cir. 2004) (recognizing apportionment is appropriate when claims are "fractionable" but finding apportionment inappropriate on "non-fractionable" claims which were governed by theory of joint and several liability); *Herbst v. Ryan*, 90 F.3d 1300, 1304 (7th Cir. 1996) ("As the case law of the circuits amply demonstrates, the allocation of liability for attorneys' fees remains an area in which there

15

is no simple formula of universal applicability."); *Council for Periodical Distributors Assocs. v. Evans*, 827 F.2d 1483, 1487 (11th Cir. 1987) ("Given the facts of this case, we think that some form of apportionment of fees is appropriate."); *Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 959–60 (1st Cir. 1984) (finding apportionment appropriate and considering multiple theories for apportioning fees between two defendants); *Jose P. v. Ambach*, 669 F.2d 865, 871 (2d Cir. 1982) ("Judge Nickerson's decision to apportion fees according to relative culpability was within his discretion.").

These cases recognize "several options to equitably apportion fees between several defendants of varying culpability." *Jefferson*, 2006 WL 1843178, at *18. "The court may (1) divide the fees equally among the defendants, (2) apportion fees according to relative culpability, or (3) look to the real source of the offense and the relative time spent litigating against each defendant based, for example, on the number of pages of briefing and time allocated for oral argument." *Id.* (cleaned up); *Dixon-Rollins*, 2010 WL 3734547, at *3 (same); *see also, e.g.*, *Grendel's Den, Inc.*, 749 F.2d at 959–60 ("[A] number of theories for apportioning fees have been advanced. Among them are the simplest approach of dividing the award equally among the defendants, and the more sophisticated approaches of apportionment by degree of each defendant's liability, and apportionment by relative time spent litigating against each defendant." (citations omitted)). In addition to these theories, at least three appellate courts—the Fourth, Seventh and District of Columbia Circuits—have "identified several situations in which it may be appropriate to hold all defendants jointly and severally liable for attorneys' fees." *Jones*, 777 F.3d at 677–78 (finding it was not an abuse of discretion to hold the defendants jointly and severally liable for the attorneys' fee award because "[t]he claims against all three Appellants were the same" and "the work that [the plaintiff's] counsel put into developing,

16

investigating, and pursuing those claims cannot be so easily divided"); *Turner*, 354 F.3d at 898–99 ("[J]oint and several liability exists for all defendants on the non-fractionable claims; it is only when there are fractionable parts of a lawsuit not fairly attributable to other parties that liability for attorney's fees and expenses may be apportioned exclusively to the party who caused the plaintiff to incur those costs." (citations omitted)); *Herbst*, 90 F.3d at 1305 ("It is frequently appropriate to hold all defendants jointly and severally liable for attorneys' fees in cases in which two or more defendants actively participated in a constitutional violation.").

Nevertheless, even the implication of joint and several liability is not as clear cut as it may seem. For example, the D.C. Circuit has adopted a strict test, under which, "a plaintiff's fully compensatory fee for claims centered on a set of common issues against two or more jointly responsible defendants should be assessed jointly and severally," *Turner*, 354 F.3d at 898, while the Seventh Circuit more loosely holds that "joint and several liability is not appropriate in every case involving an indivisible injury," *Herbst*, 90 F.3d at 1305. Instead, *Herbst* and similar cases consider other equitable factors before imposing joint and several liability for a fee award. *Id.* ("For instance, it may be appropriate for the district court to apportion fees between an active instigator of a wrong and a more passive codefendant who had a more peripheral or ministerial role in the wrong."); *see also Jones*, 777 F.3d at 677 ("A defendant's ability to pay the award may be of some relevance as well.").

The Court need not choose between these various approaches here because regardless of whether we follow the D.C. Circuit's strict approach or the 7th Circuit's lenient approach, SMART cannot avoid joint and several liability in this case. Lett's aiding and abetting claim against SMART is intertwined with his underlying discrimination claim against SEPTA. Indeed, Lett had to prove this underlying claim in its trial against SMART, even though SEPTA was no

longer a party to the case. Thus, "the work that [the plaintiff's] counsel put into developing, investigating, and pursuing those claims cannot be . . . easily divided." *Jones*, 777 F.3d at 677–78; *cf. Rode v. Dellarciprete*, 892 F.2d 1177, 1185 (3d Cir. 1990) ("[A]ttorney hours fairly devoted to one defendant that also support the claims against other defendants are compensable." (quotation marks omitted)). As to SMART's ability to pay, the parties dispute SMART's financial status, and there is no evidence in the record from which the Court could make any finding on this issue. *See Coleman v. Kaye*, 87 F.3d 1491, 1510 (3d Cir. 1996) ("[A] district court may not set attorneys' fees based upon a generalized sense of what is customary or proper, but rather must rely upon the record."). *See id.* As discussed in the Court's Memorandum discussing SMART's motion for reconsideration, SMART failed to ask for, let alone produce, any evidence about Lett's settlement with SEPTA, thus there is no evidence from which the Court could determine whether the settlement included any consideration of fees. In short, there is no basis for the Court to apportion the fee award here.

Accordingly, the Court finds SMART jointly and severally liable for the entire fee award.

### III. CONCLUSION

For those reasons, Lett's request for prejudgment interest is granted in part and denied in part, and his petition for attorneys' fees is granted in part and denied in part. An appropriate Order follows.