IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AARON LETT,<br><br>    Plaintiff,<br><br>    v.<br><br>INTERNATIONAL ASSOCIATION OF SHEET METAL, AIR, RAIL AND TRANSPORTATION WORKERS, LOCAL 1594,<br><br>    Defendant. | CIVIL ACTION<br><br>NO. 19-3170-KSM |

MEMORANDUM

**MARSTON, J.**                                                                                                                                                                                           **May 8, 2023**

      Plaintiff Aaron Lett moves to alter or amend the judgment in this action against Defendant International Association of Sheet Metal, Air, Rail and Transportation Workers, Transportation Division, Local 1594 ("SMART" or the "Union"). For the reasons discussed below, that motion is denied.

**I.**     **BACKGROUND**

      In this action, Lett brought disability discrimination claims against his former employer, Southeastern Pennsylvania Transportation Authority ("SEPTA"), and his former Union, SMART, under state and federal law. Before trial, Lett settled his claims against SEPTA and the company was dismissed as a Defendant pursuant to Local Rule 41.1(b). That left only Lett's claim against SMART for aiding and abetting discrimination in violation of the Pennsylvania Human Relations Act ("PHRA"). After a bench trial, the Court concluded that the Union aided and abetted SEPTA's failure to accommodate Lett's disability (end stage renal disease requiring dialysis three times per week) and the resulting constructive discharge. (Doc. No. 126 at 41.)

The Court granted in part Lett's request for back pay and compensatory damages for emotional distress, resulting in a total award of $283,604.97 against SMART.  (*Id.* at 48–49.)

After trial, SMART filed a motion to alter or amend the judgment, asking the Court to reconsider its damages award.  (*See* Doc. No. 131.)  At the same time, Lett filed motions to amend the judgment to include an award of prejudgment interest and attorneys' fees.  (*See* Doc. No. 129, 130.)  In separate memoranda, the Court denied SMART's motion and granted Lett's motions in part, awarding $19,982.88 in prejudgment interest using the IRS overpayment rates discussed in 26 U.S.C. § 6621(a)(1), and awarding $328,733.10 in attorneys' fees for the work performed by Lett's counsel.  (*See* Doc. Nos. 140–43.)

Lett takes issue with the Court's prejudgment interest calculation and once again moves to alter or amend the judgment.  (*See* Doc. No. 146.)[1]  SMART opposes that motion.  (Doc. No. 152.)[2]  For the reasons discussed below, the Court finds no error in its calculation of prejudgment interest; Lett's motion is denied.

## II.  LEGAL STANDARD

Lett brings its motion to alter or amend the judgment pursuant to Federal Rule of Civil Procedure 59(e).  (Doc. No. 146-1 at 4.)[3]  Rule 59(e) recognizes that a party may move "to alter

---

[1] Lett simultaneously filed two other motions, one which seeks supplemental attorneys' fees for legal services performed in connection with post-trial litigation (Doc. No. 145), and one which asks the Court for a post hoc enlargement of the deadline for seeking supplemental fees (Doc. No. 144).  SMART initially opposed both motions (*see* Doc. Nos. 153, 154), but after conferring with Plaintiff's counsel, the parties stipulated to the amount of supplemental fees that the Court should award based on the Court's disposition of the motion to amend the judgment (*see* Doc. No. 155).  SMART also withdrew its opposition to the motion for enlargement of time.  Accordingly, the Court grants the motion for enlargement (Doc. No. 144) as unopposed, and grants in part the motion for supplemental attorneys' fees (Doc. No. 145) as unopposed.

[2] In the stipulation, Lett's counsel stated that they would file a reply to SMART's opposition brief "by the end of April 21, 2023."  (*See* Doc. No. 155 at ¶ 6d.)  To date, no reply has been filed on the docket.

[3] In the alternative, Lett moves under Rule 60(a), which allows a court, sua sponte or on a motion, to "correct a clerical mistake or a mistake arising from oversight or omission" in a judgment.  Fed. R. Civ.

or amend a judgment" within "28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). "The purpose of a motion for reconsideration is to correct manifest errors of law or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985). "Out of consideration for finality and judicial economy," courts grant motions for reconsideration "sparingly." *Hatcher v. SCM Grp. N. Am., Inc.*, 167 F. Supp. 3d 719, 728 (E.D. Pa. 2016) (citation omitted).

The Third Circuit has identified three bases for altering a judgment under Rule 59(e): "(1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct a clear error of law or prevent manifest injustice." *Allah v. Ricci*, 532 F. App'x 48, 51 (3d Cir. 2013) (quoting *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010)); *see also Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). Lett does not specify under which basis he is proceeding, but the only one relevant to his argument is the third: the need to correct a clear error of law or prevent manifest injustice. (*See* Doc. No. 146-1 at 4 (arguing that the court's prior opinion contained a "mistaken calculation of prejudgment interest" and should be corrected to "reflect the mandate of compounding on the principal amount from the time of the loss to present").) A clear error of law exists if "after reviewing the evidence, [the court is] left with a definite and firm conviction that a mistake has been committed." *Norristown Area Sch. Dist. v. F.C.*, 636 F. App'x 857, 861 n.8 (3d Cir. 2016).

---

P. 60(a). Rule 60(a) is, however, "strictly confined to the correction of clerical or scrivening errors." *Days Inns Worldwide, Inc. v. JPM, Inc.*, Civ. No. 13–3017 (KM), 2015 WL 5474882, at *3 (D.N.J. Sept. 15, 2015). Here, Lett contends that the Court "incorrectly employed the number of days" for which Lett accrued back pay and failed to properly compound prejudgment interest on that award. (Doc. No. 146-1 at 4–5.) In other words, Lett disagrees with the Court's methodology for calculating prejudgment interest. This perceived error goes well beyond the bounds of a clerical or scrivening mistake, and thus, Rule 60(a) is not applicable. *See Stradley v. Cortez*, 518 F.2d 488, 493 (3d Cir. 1975) ("Rule 60(a) is not applicable to plaintiff's situation because the "mistake" here, if there was a mistake, was not clerical in nature.").

**III.     DISCUSSION**

Lett takes issue with two aspects of the Court's calculation of prejudgment interest: (1) the number of days in the period for which back pay accrued, and (2) the Court's approach to compounding interest on that award.  Neither argument is persuasive.

**A.     *Back Pay Period***

First, Lett argues that "the Court mistakenly stated that the correct number of days in the [relevant back pay] period was 1049" when the "actual number of days in the appliable pay loss period was 1409."  (Doc. No. 146-1 at 5.)  Lett does not explain why 1409, as opposed to 1049, is the correct number.  Regardless, the Court disagrees with his calculation.  As the Court explained in its prior Findings of Fact and Conclusions of Law (*see* Doc. No. 126 at 42 ¶ 59), typically "[a]n award of back pay is calculated from the date of the unlawful termination to the date that judgment is entered in the plaintiff's favor," *Newton v. Pa. State Police*, Civil Action No. 18-1639, 2022 WL 874306, at *8 (W.D. Pa. Mar. 24, 2022).  However, in this case, Lett failed to mitigate his damages by withdrawing from the job market between October 2, 2017 and April 16, 2019.  (Doc. No. 126 at 43 ¶ 66.)  Accordingly, back pay did not begin to accrue until April 17, 2019.  Based on representations made by Plaintiff's counsel at trial, the Court found that accrual continued until March 1, 2022—the first day of trial—because Lett had accepted alternate employment with SEPTA and was not seeking lost wages going forward.[4]  (*See* Doc. No. 117 at 15:14–21 ("[W]e are not asking for any future pay, and the reason is that, as you are

---

[4] The Court has relied on March 1, 2022 as the appropriate end date for back pay since the initial entry of judgment on September 27, 2022.  (*See* Doc. No. 126 at 45 ¶ 71.)  Notably, Lett did not challenge that end date—or the applicable back pay period—at any point before now.  Moreover, Lett's current motion, confusingly, acknowledges that February 28, 2022 is the correct end date for back pay.  (*See* Doc. No. 146-1 at 1 ("[T]he Court properly held that the prejudgment interest owed by Plaintiff should be calculated with compounding on amounts that would have been earned by Plaintiff from April 17, 2019 through February 28, 2022").)

4

aware, we made a settlement with SEPTA. That settlement allows Mr. Lett to come back to work . . . [a]nd as a result, as of the date that he returns, which should be within the next two weeks, he will no longer need to have you consider future pay . . . .").) That means the relevant period for back pay is April 17, 2019 through February 28, 2022, a period totaling 1049 days.

Although Lett does not explain how he arrived at the 1409 figure, the prejudgment interest spreadsheet attached as Exhibit B to his motion suggests that he counted the days from April 17, 2019 until the date of the Court's amended judgment, February 22, 2023—a period that totals 1408 days. (*See* Doc. No. 146-2 at 23.) Assuming that this calculation is the basis for Lett's assertion that the back pay period totals 1409 days, he is wrong. As the Court has explained numerous times to date, back pay accrued from April 17, 2019 through February 28, 2022. Although *back pay* stopped accruing on March 1, 2022, *prejudgment interest* on the entire back pay award continued to accrue after that date—a fact that the Court accounted for in its prior calculation. (*See* Doc. No. 142 at 7.)

There were 1049 days in the back pay period. Lett's motion to amend the judgment to reflect a back pay period totaling 1409 days is denied.

### B.   *Compounding*

Second, Lett argues that the Court incorrectly compounded interest for each quarterly period. (*See* Doc. No. 146-1 at 5.) In support of this argument, Lett gives one sentence of analysis: "Employing the built in compounding feature of the Excel software, the proper calculation utilizing the correct number of days in each quarterly period from April 17, 2019 through February 22, 202[3] and compounding on the basis of the quarterly rates published by the IRS would be $84,227.11 as reflected in the detailed Excel chart attached as Exhibit 'B'." (*Id.*) Exhibit B, in turn, is a single page pdf of that Excel chart. The pdf does not give the formula used by the Excel software to calculate the interest earned each quarter of the backpay

period.

As explained in the Court's prior Memorandum, the Court calculated prejudgment interest, compounding on a quarterly basis, using an accepted mathematical formula: Principal $(1 + \text{interest rate}/\text{number of times per year})^{(\text{number of times interest is compounded per year} * \text{number of years})}$ _ Principal.[5] (*See* Doc. No. 142 at 6–7.) Because Lett has not provided the formula used in Exhibit B, nor explained his prejudgment interest calculations, nor provided a copy of his spreadsheet in Excel format, the Court has no way of knowing exactly how he reached the totals provided in the spreadsheet at Exhibit B. Nevertheless, after reviewing the spreadsheet, the Court agrees with SMART that the table in Exhibit B fails because it "incorrectly multiplies by the full IRS percentage amount each quarter, rather than properly dividing the interest rate by four as is required to accurately compute quarterly compound interest." (Doc. No. 152 at 5; *see also* Doc. No. 146-2 at 23 (multiplying the interest rate for each quarter by the full interest rate without accounting for the fact that the interest accrues only for a fraction of a year).[6])

Lett's motion to amend the judgment to adopt the prejudgment interest calculations included in Exhibit B is denied.

## IV.    CONCLUSION

Lett's motion to amend the judgment is denied. Lett's supplemental petition for attorney's fees is granted in part as unopposed, and consistent with the stipulation between the parties, Lett is awarded an additional $47,687.50 for work performed in connection with post-trial litigation. Lett's post hoc motion for an extension is granted as unopposed.

---

[5] *See* Dipen Pradhan, *How to Calculate Compound Interest* (2022), https://www.forbes.com/advisor/in/investing/how-to-calculate-compound-interest/

[6] For example, in the first line item in Lett's spreadsheet, he lists the total principal earned as $9,663.66, and the applicable interest rate as 6%. Lett then multiples those numbers together—without first accounting for the fact that interest is accruing for a quarter of a year as opposed to a full year—to reach a total "interest earned" of $579.82. (Doc. No. 146-2 at 23.)